I'm here on behalf of the appellant Tom Rusnack. Yes, sir. Thank you, sir. I thought it important to perhaps briefly touch upon the facts in this case, although I know that the court does take time to prepare itself. There are some factual issues that are in dispute. In this particular case, it involves a situation between the debtor and the debtor. Or Mr. Rusnack, the appellant in this matter, and his wife, Annalisa Rusnack, and their lender, Cardinal Bank. It was on August 4, 2003, that husband and wife at that point in time executed a home equity line of credit, or if I may, a HELOC agreement. And as part of that HELOC agreement from Cardinal Bank, the bank had issued checks on to both of them, such that they could draw advances simply by drafting a check against the account. However, they began having some marital difficulties and ended up separating in March of 2006. At that point in time, Mr. Rusnack, taking perhaps a precautionary route relative to the nature of the HELOC account, went to Cardinal Bank and issued to them a letter asking that the account be frozen. That was on June 22, 2006. And on that same day, a Ms. Barbara Hudson, who was a loan service manager for Cardinal Bank, issued a letter back to both Mr. and Ms. Rusnack at that time, indicating, which I will quote from the letter, it says, this letter serves as a notification that, per your request, we have placed a freeze on the above loan that will stop all further... Hold on a second. We're out of lights here. Okay. Did it come back up? I've got my timer going. Yeah, it's back up. Well, it looks like you might get a little extra time. Tell you what, we already know, we're pretty familiar with the facts. Okay. Why don't you tell us whether those lead to a claim of recoupment or setoff in this case? Well, I don't think that it's, setoff is not pertinent under the Code, Your Honor. I believe it's recoupment. And I mean, there are two forms of recoupment that are pertinent here. One is common law and the other one being statutory under the Virginia Code. So what Judge Teel, in fact, noted in his original decision that... Why don't you tell us why it's not setoff before you get into recoupment so you just don't gloss over that part? Why it's not setoff? Right. Because if it's setoff, as I understand it, you have a statute of limitations problem. That's correct, but the nature of the issues are slightly different. I mean, what Mr. Rusnak is claiming is essentially that he's not entitled or that the bank, rather, is not entitled to the funds that they brought suit for initially. So, I mean, it's not necessarily a setoff. I mean, what his argument was is really based upon... As I understand the bank's argument, I may not understand it, I thought that part of their argument is that it's a claim of setoff and so the statute of limitations applies. So... No, I think what their argument is, rather, is simply that because of the passage of time, the statute of limitations kicks in such that Mr. Rusnak cannot make any defense at all is what their argument is. Well, did Cardinal Bank raise the statute of limitations problem in the district court? I mean, in the bankruptcy court? They didn't raise it in the bankruptcy court, did they? I... And if so, where is it in the record? Offhand, I... I thought that was a late-breaking thought on their part. You know, Your Honor, I have to apologize. I'm not absolutely clear. I do think that it was raised as an issue. I know that it was certainly raised before the district court. Absolutely, but I'd be interested to know where it is raised in front of the bankruptcy court. The... But you go ahead and make your presentation and you can tell us later. Well, in any event, the... I'm sorry, just before we move off that point, I just want to make sure I understand, too. My understanding is that the district court, the whole recoupment thing becomes an issue as a defense to a statute of limitations claim, right? Well, the recoupment issue, if pertinent... It's not relevant unless there's a statute of limitations problem. Isn't that right? No. Well, it's just the other way around. If recoupment is pertinent, then the statute of limitations problem disappears. Right. But also, if there is no statute of limitations problem, recoupment disappears, correct? Well, if there is no... Okay. Correct. If there is no statute of limitations problem, then we can go straight to... Great. Let me ask my question about the statute of limitations. The district court held, right, that the object... that an objection to the bank's proof of claim is barred by the five-year limitations period on a breach of contracts action. Are you conceding that this is a breach of contracts action and it should be governed by that five-year statute of limitations? No. I wouldn't at all. I mean, again, this is part of the problem with this whole thing. I mean, is that what went on initially, Mr. Rusnak complained repeatedly to the bank to correct the error that it made, and it never did. And this is something that took place by way of complaints over a long and extended period of time. Now, unfortunately, though, he did not initiate, and this was something that the bank picked up on, he did make no complaint or brought no civil action so as to enforce any kind of a right that he may otherwise have based upon the bank's errors for an extended period of time until such time as the bank, which waited out a limitations period, if you will, before initiating a foreclosure action. This is how this got into the bankruptcy court to begin with. So the, from my perspective, again, it's not a question of whether or not limitations is pertinent. The question first, I mean, the horse before the cart is whether or not recoupment. Yes. When one of us is talking, you should be listening. So the statute of limitations is pertinent if it applies. The statute of limitations, I would concede that the statute of limitations would be pertinent if recoupment does not apply. I thought you told me that you weren't conceding that a five-year breach of contract statute of limitations suddenly applies in bankruptcy when somebody objects to a proof of claim. So the bottom line is the claim that you're making, the defense to the bank's claim, is it a legal defense or is it an equitable defense? If it's a legal defense, then the statute of limitations applies. If it's an equitable defense, then recoupment will apply. Well, it's an equitable argument, Your Honor. I mean, again, I mean, what the debtor or Mr. Rusnak was put into the position in his bankruptcy court was one in which the bank submitted its proof of claim and Mr. Rusnak filed an objection to it. Now, in filing that objection, what he said, and this was something, again, what he did was he raised defenses that were defensive in nature and not offensive in nature. He didn't raise any question with respect to whether or not he was entitled to some remedy against the bank, other than reimbursement for a reduction, rather, relative to some charges that the bank had imposed. Well, then do we even have a contract action at issue here? Well, it is a contract action to the extent that we're talking about a HELOC agreement, yes. And what Mr. Rusnak's argument would be is that that HELOC argument, and this is where the recoupment issue kicks in, and that's that he states, would state, that based upon the agreement that he had at one point in time with the bank earlier on, when he first became aware of the bank's error, the bank agreed to modify the terms of its HELOC agreement such that instead of either of Mr. or Ms. Rusnak being able to issue a check individually, that now the bank said both would have to execute any particular check for the bank to honor. Is it your contention that you have one modified agreement or you have two separate agreements? I think you have one modified agreement. I mean, all we're talking about, we've never stepped away from the HELOC agreement itself. All what was accomplished by Mr. Rusnak and his agreement that Ms. Hudson had put into effect on behalf of Cardinal Bank was that there would be no further advances on the account until such time as the both of them agreed to do so. So in essence, I think what he did was, through the commercial code at least, he created a situation in which the bank was not authorized to issue, essentially the account was closed down, subject to being reopened based upon joint action, and two, there was essentially a stop payment order, again under the commercial code, for any individually issued checks. And that's what then created the problem when the bank subsequently honored two checks that were individually issued by Ms. Rusnak. Now, what the bank says, let's just assume you're right and you get to make an equitable defense here, it's not barred by, it's not a legal claim barred by the statute of limitations. But the bank makes the contention that even if that's true, as I understand what they argue, even if that's not, even if they accept that premise, that your client either waived the privilege of asserting it by continuing to pay the payments all these years or latches applies. So what's your response to that? Well, I think, again, if to the extent recoupment is pertinent, which is what Dutter's argument would be, recoupment states by nature, and this goes back to the Supreme Court decision, that the statute of limitations never will then act as a bar to the defense raised by way of a recoupment argument. Well, don't you have an issue of acquiescence? I mean, he paid interest on this loan for six, what, six, seven years after he said that it was unauthorized and protested. How can you pay interest for that long and not be acquiescing to the obligation? I mean, isn't that something that needs to be resolved, whether he acquiesced? Well, I mean, this gets into the nature of whether or not there's been a waiver, I think, is what Your Honor is driving at. But there's never been, he never did anything actively to waive his rights. Well, he paid interest on the loan for years. He did pay interest on the loan. Isn't that an acknowledgment that the loan exists? No, I think what he was trying to do was to avoid going into default at any point in time. No, I understand what he was trying to do, but I'm saying what's the legal consequence of paying interest on a debt for seven years when you dispute that you even owe the money? I think the answer really, again, falls underneath the notion of the application of recoupment. I mean, to the extent of limitations doesn't apply. How can then? Well, can't you, you can assert a defense of recoupment, but you can still take other acts that would amount to waiver or acquiescence, can't you? Well, the whole argument, again, as Your Honor has noted, I mean, we're talking about a passage of time, which is exactly what a limitations argument is. Well, did either the bankruptcy court or the district court ever consider that as a separate issue and rule on it? I believe the bankruptcy court impliedly recognized the recoupment defense. The district court below indicated that it felt that recoupment was not pertinent at all based upon the standards pertinent to common law recoupment. Didn't one of the courts talk about waiver in a footnote? Well, I mean, the argument that was raised is essentially that, I mean, to the extent, again, I mean, and this is a universal thought that if recoupment is pertinent, then limitations. We're not asking about recoupment. We're asking about waiver. And I'm wondering whether one of the courts, maybe you don't remember, and I'll look it up. Well, it was the district court that mentioned, I think, within perhaps one or two lines, I think, towards the end of its opinion. And it was a very short opinion that, well, firstly, that limitations applied. Well, the bankruptcy court was just looking at it as a situation where the debtor promptly reported it, right? I mean, wasn't that the focus of what the bankruptcy court was saying? No, I think what the judge said. Regarding ratification or acquiescence or whatever? I mean, didn't the bankruptcy court just say the debtor promptly reported the charges? Well, the bankruptcy court did note that Mr. Ruznick did promptly complain about the charges. Right. Immediately. But I think the basis upon which the bankruptcy court issued its decision was upon an erroneous thought process relative to an old definition of what an unauthorized signature would be. Okay, but prompt reporting isn't enough, is it? I mean, if you continue to acknowledge the obligation by paying interest? I don't think. And, again, this gets into the waiver issue. I mean, if limitations can't apply. I mean, isn't it the issue of, I think, isn't it really whether he ratified by acquiescence? Is that what you're calling waiver? No, what has been argued is that he waived simply or that he waived his rights or what's been argued by the bank is that he waived his rights relative to the arguments being raised because of a passage of time in not having asserted actively any right that he may have had at that point in time. My point was simply that if we're talking about a passage of time, which is how the waiver issue was raised, and where latches, which is exactly what that is, is that the whole notion of passage of time evaporates to the extent that the court finds that recoupment is pertinent. Counsel, you've gone over your time and we gave you a little extra, so you've got some in rebuttal. So we'll be hearing from you a little bit further. So Ms. Davis. Good morning, Your Honor. Should it please the Court, Erica Davis on behalf of the Appellee Cardinal Bank. I would like to raise to the Court's attention that we did have to file a new disclosure regarding this corporation as it was brought out just recently this week. So I do want to raise the Court's attention to that. With respect to our argument, what we are saying is that Mr. Rusnick used the bankruptcy proof of claim process to breathe new life into issues that he waived, issues that he did not assert any contractual rights with respect to. Basically, in 2006, when this issue came up, the bank continued to try and collect all of the funds, including these disbursements of $20,000. Why did it do that? I mean, it had admitted that it was a mistake and that the $20,000 shouldn't have been paid out. So why did it keep trying to collect on them? I think it admitted it, but it also said, we'll look into it. And they were supposed to, or I think perhaps get it from Ms. Rusnick. And I think this is where it's important that Ms. Rusnick's testimony comes in to that proof of claim case. And she says, excuse me, but this was a part of joint debts that my husband and I were paying out as a part of our divorce proceedings. The bankruptcy court didn't buy that. The bankruptcy court did not buy that, but the district court looking said this was a clearly erroneous decision because in that testimony, the first thing she provides is, I was responsible for paying the debts of our joint marital relationship. What deference do we owe the district court's reversal of the bankruptcy court's factual finding? Well, in looking at or going back to the bankruptcy court finding, we can look and see it's not just a matter of can we find two different conclusions, but this is clearly erroneous as we have. Well, to what extent is our – tell us what our standard of review is of the district court. Do we stand in the same posture as the district court regarding reviewing the bankruptcy court's findings? Yes, you do, Your Honor. Okay. Lay out the landscape for us. That is correct, Your Honor. So going back to the bankruptcy court decision and just looking at those facts and seeing that it was clearly erroneous, we go back to, I believe the bankruptcy court relies heavily on one statement made by Ms. Rusnick, which goes back into our statute of limitations argument, which she could not name every specific transaction in terms of what she did with the $20,000. And again, Your Honor, we have raised that this passage of time, these issues, this failure of Mr. Rusnick to do anything until not just when we had foreclosed on him, there was no response about this, but only until the point in which we filed a proof of claim, was there a response, was there a defensive action? Our appeal to the district court was that this is not permitted. This is not a case of recoupment. This is a case of two separate transactions in that this particular debtor had to do something. The debtor explains and admits it wasn't until approximately 2013 that he did something, and it wasn't in the form of any breach of contract, but it was a couple of alerts to some agencies or consumer agencies, and there's testimony in the bankruptcy court that those particular agencies did nothing with respect. Let me tell you what I'm worried about. Let me tell you my concern, and maybe you can address it. And this has nothing to do with the parties, actually, in this case. But I'm picturing, say, like a low-dollar depositor at some big bank that's running this depositor around. And so let's make her a woman. She gets on the phone. She calls. She complains. She tries to get it worked out. Nothing happens. It doesn't get worked out. And you're saying that in order to preserve, to not waive, to preserve her claim, she needs to sue them in court? Your Honor, it's a... Why isn't it enough to pick up the phone and call your bank and say, stop doing this? Why isn't that enough to preserve your claim? Judge Harris, you raise a point, but that's not what happened in this particular case. Well, he did pick up the phone and call and say, stop doing this. He did pick up the phone and say, stop doing this. But what the bankruptcy court and what the testimony was was after it, after that happened, after that point, they go back in, they take out more money. They're still clearly happy with this bank. He made his calls, and the bank says, look, you still owe the money. But you're trying to get an old lady. She's still, you know, depositing her $20 check and taking out $10 when she needs to. She's still using the bank, but she's complaining. I mean, do you really have to terminate your relationship with your bank to preserve your claim? You don't have to terminate your relationship with the bank, Your Honor, but you have to do something more. And this gets back to that notice. This is what you have to do. You have to say what has happened to you once you get the bank statement. So he made a complaint. Their decision was, we're going to look into it. We're going to ask your wife about it. And what they determined is these funds are still due. So on every statement, every year for six years, they continue. Is that what starts the statute of limitations claim running? Yes, Your Honor. We start with the 2006, the actual disbursement of it. We do start there in terms of our claim to the court that he would have had to file something by September 6th of 2011, for which he did not. This was not until after he defaulted on the payments. So why do we treat his defense to the $20,000 as a legal defense to which the statute of limitations applies as opposed to an equitable defense where recoupment applies? Because we have two different transactions. We do not have a situation, as Judge Harris said, where we have a person just calling up and saying, hey, here's a tiny bank error. This was a separate transaction. This was a separate request, separate and above the HELOC arrangement that the parties had. This was, can you do something special? Well, you've got the HELOC, and then they make the separate, they call it a freeze agreement, which under the HELOC they're authorized to do, which modifies the HELOC to the extent of permitting additional single-party withdrawals. And the bank acknowledged that that was valid and that they shouldn't have done that. Well, normally in bankruptcy, when it's not a procedural matter, you're applying the substantive law of the state of the debtor, which would be Virginia law in this case. So under Virginia law, a modification to a contract simply extends a single contract, which would seem to indicate that equity applies and it's a recoupment claim, not subject to a statute of limitations, not two separate agreements. Your Honor, in the cases that we've cited, when the court's reasoning that follows, the parties would have said, we're incorporating everything here, too, with respect to this transaction. We're going to go back to that other transaction. That's not what happened here. This was a separate and distinct arrangement. They didn't close their account. They were still seeking money. Why didn't they just modify it? They modified it so it now requires two signatures instead of one. That's the only change to the HELOC. It was more than a modification. It was a separate request by the parties. It was a separate contract. And when we're looking at recoupment and we're looking at this test of whether or not this was a continuing agreement among the parties, they did not refer back to where the court has said that this has happened. There was no incorporation by reference. And this was separate and apart. This was putting on new duties. And the parties took those funds. And we have to remember that there's testimony in the district court level. We took those funds. We used it for our joint debts. Let me ask you this, counsel, if you don't mind me interrupting. And if they had simply written the terms of the freeze agreement onto the face of the HELOC and initialed it, would that have been sufficient under your theory to make it a single contract? It would not have been sufficient because we're changing relationships of the parties than what's initially done in the HELOC. In the litany of the cases that are referred to. The HELOC gave them permission to do it. There's a specific provision in there that does that. Right. Your Honor, this is a separate agreement. This is a separate issue. And when we look at the issue of the doctrine. How does the validity of the check change whether it's a separate agreement or an individual agreement? You haven't told us that. Your Honor, it doesn't change the validity of the check, but it goes back to the issue of whether the doctrine of recoupment applies with respect to this actual HELOC, if it's one single transaction or if these are two separate transactions. So the validity of the check is still there, and that's why it was important for the bankruptcy court to have that testimony that these funds were used by Mr. Rusnick and Mrs. Rusnick to pay their joint debts and that so much time has passed we can't even identify those because nothing happened. Even when he made his claims that he did to consumer agencies, there was no response that Cardinal Bank had done anything. And going back to our original set of facts here, every single month as he's receiving his statement to which he would go and pay, this $20,000 is still sitting there. Even when the foreclosure was filed, still no action, no counterclaim, nothing saying, hey, I don't owe this $20,000. It wasn't until very late after the bankruptcy filing. Once our proof of claim filed, all of a sudden this issue of $20,000. So what's your Virginia Commercial Code section that you're arguing in support of this argument? We're arguing that it comes under the actual five-year statute of limitations court's indulgence with respect to this issue. So you aren't arguing ratification by acquiescence at all? We are arguing waiver and latches, and I believe the court had wondered was this a new argument brought in the district court, and I wanted to draw the court's attention to the appendix at page 131, and in paragraph 13 of our response to the objection to the proof of claim at the bankruptcy level, we raised that issue. Which issue? We raised the issue of waiver statute. But what about the five-year contract, breach of contract statute of limitations? Did you raise that? Yes, we raised that, and I believe it's in paragraph 13, and that's where this phrase that we've said repeatedly, we're not bringing new life back into this issue. What page is that on? I believe it's the appendix, page 131 at the very bottom. I'm going by those page numbers, Your Honor. Document, docket number entry 16, and I believe it's on our paragraph 13. I don't see a paragraph 13. It looks like there are only ten paragraphs. Right. Yeah, 131 is just the face page of the pleading. I believe it's, I apologize, Your Honor, it may be in the appendix. I looked at the bottom numbers of the pages. But it was the appellee's appendix at page 131. And you say it's somewhere in your objection to proof of claim. It is, and that is in the bankruptcy docket entries. I can refer to that number 16, and that's where we start and we continue to say throughout our arguments at each level that Mr. Rusnick is attempting to breathe new life into something that's barred by the statute of limitations, into something that's barred by waiver and latches. Okay, but you don't know where the term statute of limitations appears in your pleading? In my particular review of it, Your Honor, court's indulgence for just one moment. Yeah, because the document that starts at page 131 and goes over to 134 only has ten paragraphs. And I can't read my own handwriting. It's 151 now that I've enlarged it. 151? That is correct. No, this is a different argument. Oh, good. Oh, okay. Is it in here? If we go to 151 and 152, paragraph number 13, and I'll read it to the court. The debtor knew that the withdrawals on the HELOC had been made based on the account statements provided to him, in addition to the letter of September 26, 2006, yet he chose not to take any affirmative action to address it with the bank for four years. The debtor is clearly barred by the doctrine of latches, as well as the statute of limitations referenced above. What is the statute of limitations referenced above? We're looking for that. That, Your Honor, is at paragraph 10, Virginia Code section 84-406, and that's in our paragraph 10 going back to page 152. That's not the five-year breach of contract statute of limitations. In court, that's not the contract statute. I believe it's in this same paragraph, court's indulgence for just a moment, in the same document. Judge Keenan and I used to know that by heart, but not anymore. I do not, Your Honor, court's indulgence for just one moment. I cannot find the specific citation readily available to the court. Going back to our argument regarding the statute of limitations, we do reference and say applicable statute of limitations. We do not cite the exact co-provision I can see from this particular. That's a different statute of limitations. I mean, I did look for this pretty carefully, and I couldn't find that the bankruptcy judge would have been on any kind of notice as to a five-year breach of contract statute of limitations claim. And I believe the bankruptcy, in our bankruptcy action, we were talking about this issue of notice provision with respect to what was supposed to be done every time he gets the bank statement, if I may correct myself. Every time he gets the bank statement on the back of it, it says, this is what you have to do. Right, but that's a different issue, isn't it, than a five-year limitation on the contract? I think that that may be a different issue, Your Honor, but going back to it, the district court, yes, brought that up in its actual opinion, going beyond which statute of limitations that we said. We said applicable statute of limitations as listed above. And then in a separate paragraph 10, we said statute of limitations, but did not cite that specific statute, but it still would apply here. All right, so what statute of limitations are you saying the district court applied? The contract statute or this unauthorized report statute under the UCC? The district court applied the five-year statute of limitations, and the district court refrained at the end of its memorandum and opinion from going back to the issue of whether or not the bank statement. Well, which five-year statute of limitations? In terms of its opinion, if I may. Just because it says five years doesn't mean the same provisions apply. Yes, because, see, I mean, the bankruptcy court found that Resnick did notify promptly, so that one-year limitation imposed by the statute wasn't part of the bankruptcy court's decision at all, and then it appears the district court piggybacked onto something entirely different. Well, the bankruptcy court's decision was based on this notion of organization versus not organization, which we know has since changed and used an older co-provision that did not apply to the Resnicks as this entity or organization. But going back to the statute of limitations argument, looking at Judge Mott's opinion with respect to the statute of limitations argument, there is not a specific citation with it as well, Your Honor. It just simply says he made no claim against them during that period of time. Well, let's just assume for our argument today that we disagree with you on that the statute of limitations applies and that this is an equitable defense of recoupment. So if that's the case, why doesn't the debtor prevail? The debtor doesn't prevail because we have to go back. If this court is standing in the shoes of a bankruptcy court and reviewing the issues as the standard from a bankruptcy court, when the bankruptcy court is looking at the issues of recoupment, it has a much narrower focus and a narrower standard. So it would not allow him to have recoupment in this particular stance or in this particular posture. He did not raise this, again, at the foreclosure level. He doesn't raise it at the bankruptcy level. He only waits until we file our proof of claim to do something. So if this court has to look back at the standards. If it's an equitable defense not subject to the statute of limitations, what difference does that make? If it's an equitable defense not subject to the statute of limitations, I'm saying to the court that the bankruptcy, looking at it from the bankruptcy court posture, we don't have that liberal stance to look at it from a more broad perspective. When bringing this into a bankruptcy case, there is a very narrow perspective on how you can look at his particular equitable rights with respect to that interpretation. Well, tell us what recoupment is in your view. Recoupment would be if the parties, if there was an issue of I made a, if I could give an example, as Judge Harris made, in that the person in that particular example had made some sort of payment and this was an issue over a payment. There was no extra changes to or modifications to the loan. This was just a little old lady going in, as Judge Harris' example said, and wasn't able to get her particular payment history or payment issue worked out, and then later on she was able to prove I did make this payment. This is something very different. This is where there has been a change in the relationship of the parties. There's a separate. Let's assume, though, that we've decided, just for argument purposes, that he gets this recoupment defense, which of necessity means we've decided this is all one transaction. We're just going to assume that. So if that's the case, why doesn't the debtor win? What defense does the bank have then? If the court assumes that the recoupment is available, then there would not be a statute of limitations with respect to Mr. Resnick. However, he would still owe money. No, Your Honor, it doesn't end the case. That's very important. The bankruptcy court's actual decision does not say, well, the case is over and your claim is completely barred. It sent us back to another hearing in which they would look at the numbers and recalculate the numbers. If the court makes the determination that there was no recoupment, there's still money. The recoupment exists. There's still money owed by Mr. Resnick. There's still money that he would have had to pay because, as the court knows, they both testified. We're just talking about this $20,000, right? Yes, Your Honor.  Your Honor, assuming the court's example, that there would be recoupment and that he did not owe that, I'm going with the court's analogy, then there would still be funds owed. A part of the facts presented to the bankruptcy court. Well, the $20,000 part of the money you say is still owed. Yes, it's a part of the money we say. And that's because? Because we believe recoupment does not apply. But if we're going with the court's analogy, it would not apply and the $20,000 would not be in there, if that answers the court's question. So if we're going with the court's analogy, that if recoupment exists and that there is no statute of limitations in which Mr. Resnick can raise this, there will still be money owed even if the $20,000 was extracted from that. The bankruptcy court saw that issue. I don't think the debtor contests that, does he? I'm sorry, Your Honor. I don't think the debtor contests that he owes whatever's left on the? I believe the debtor would contest that there would be anything owed if that $20,000 was missing. I believe there's some other issues. If he does, that's not part of this case, right? That is correct, Your Honor, just in that analogy. If recoupment applies, this case is over. If recoupment applies, then the issue of the appeal of the proof of claim is over, but the bankruptcy and the issues with foreclosure are still going. Thank you very much. Thank you. We'll hear from Mr. Gautron. You've got some rebuttal time. Thank you, Your Honor. Thank you. Thank you, Your Honor. A couple things that were stated that I would like to correct, if I may. There's a reference made by counsel that recoupment in a bankruptcy context is treated in a narrower fashion, which is absolutely not true. There's no case that says anything like that. The recoupment, if recoupment is pertinent, recoupment is pertinent, no matter what court you're in. Now, two, there is some dialogue here whether or not the debtor acknowledges owing or he would contest, whatever. The problem that goes on here is, and this gets back to one of the things that was earlier said, or the concern that was earlier stated, which is that if the bank says this was your debt, but now you owe $20,000 more, and Mr. Rusneck goes half out of his mind dealing with the bank time and time again, I think the testimony was that he went down to the bank 30 to 40 times, in which they acknowledged his complaint. He was told by one of the bank managers that the money would be replaced into his account. He was told not to worry about this, and he was told this after he found out about the first check, before the second check. So, I mean, we're talking about a situation, and again, it gets into counsel's concern. What more do you need or should you need to do if a bank makes a mistake, whether it's five cents on an account or $5 million on an account? I mean, if the bank makes a mistake and particularly admits to it, it would seem to me that they've got an obligation to fix it at that point in time, not wait for years when an argument might kick in that says statute of limitations is now pertinent. Mr. Rusneck, you're out the door. You now owe the $20,000, and that's exactly what's going on in this case. What more could he do? I mean, I think he went above and beyond whatever it is that any reasonable person might have done. Now, secondly, too, we're not talking about a separate agreement here, a separate contract, and I think this is some of the issues, some of the notion whether or not recoupment is pertinent here. We're talking about one HELOC agreement that was modified in a partial respect, that is that if a check is issued, as was indicated earlier, we're no longer going to honor individually issued checks. The subsequent, I mean, there were two checks that were issued, and then, as counsel alluded to, there was a third check in which both Mr. and Ms. Rusneck went to the bank and said, now we'd like to advance some funds. That is totally compliant with the agreement that Mr. Rusneck put in place with the bank earlier on as part of the freeze agreement. The freeze agreement stated that no individually issued checks would be honored. In fact, let me read again, and I think this is pertinent, too. I think you've made that point really clear, but what you haven't made clear is why he paid for six years. Well, I mean, I can answer the question, Your Honor. It's not part of the record. Well, that doesn't work. Thank you. We have to confine ourselves to the record. I understand. What Ms. Hudson did in her agreement, the stop says, this letter serves as a notification pre-request that we have placed a freeze in the above loan that will stop all future withdrawals from this account. If you need us to honor an item or release the freeze, both of your signatures will be required. We're not talking about a separate agreement. We have reference to the HELOC agreement itself. And in fact, I believe it was, beg my pardon, I believe I mentioned this in our brief, the Newberry Corporation case is particularly illuminative. And this is a case that came out of the Ninth Circuit in which there were two totally, entirely different contracts that were involved. The only correlation between them, as noted by the Court, was that the subsequent contract contained a provision in which there was an incorporation of a non- what it says, the Court held, recoupment applied due to the earlier agreement being incorporated into the latter simply by virtue of a non-waiver clause in the latter agreement permitting the surety to maintain any rights it may have had under the earlier indemnification agreement. Totally different contracts, but we're talking about maintenance of a non-waiver clause from an earlier agreement. And yet in that particular case, the Court held that recoupment was pertinent. And I mean, we're talking about a simple modification. It's the same thing. I can't understand how recoupment wouldn't be pertinent in this particular case. The part of the argument, too, that the bank has made is that Mr. Rusnak should not be entitled to go into bankruptcy court and raise things in this fashion so as to breathe life into something that, from their perspective, is fine barred. And there's nothing wrong. He did nothing wrong. There's nothing under the bankruptcy code or the bankruptcy rules of the Federal Code that says he can't do what he did. He did exactly what he could do. Judge Teel recognized it in his decision in that one sentence that I referenced in my brief and recognized that recoupment was pertinent. Mr. Rusnak, I can see my time is running out, Your Honors. I do want to thank the Court for its consideration. And thank you very much. We thank counsel. We're going to come down and greet you, and then we're going to move on to our next case.
judges: G. Steven Agee, Barbara Milano Keenan, Pamela A. Harris